**SO ORDERED.**

**SIGNED this 09 day of February, 2012.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## NEW BERN DIVISION

IN RE:

| | |
|---|---|
| CATHY LYNN HENRIES, | CHAPTER 7 |
| | CASE NUMBER: 08-08631-8-RDD |
| **DEBTOR** | |

| | |
|---|---|
| GEORGE M. OLIVER, TRUSTEE, | ADVERSARY PROCEEDING |
| | NUMBER: 11-00003-8-RDD |
| **Plaintiff** | |
| v. | |
| JEFFREY ALLEN MOORE, | |
| **Defendant** | |

### ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pending before the Court is the Motion for Summary Judgment and the accompanying Memorandum of Law filed by Jeffrey Allen Moore (the "Defendant") on November 7, 2011 (the "Motion") and the Response to Defendant's Motion for Summary Judgment and Plaintiff's Incorporated Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and the accompanying Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment

filed by George Mason Oliver, the Chapter 7 Trustee on November 28, 2011 (the "Objection"). The Court conducted a hearing on January 11, 2012 in Wilson, North Carolina to consider the Motion and the Objection.

## JURISDICTION

Subject matter jurisdiction and jurisdiction over the parties exists pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference of the United States District Court for the Eastern District of North Carolina dated August 3, 1984.

This matter is a core proceeding as set forth in Section 157(b)(2) of Title 28 of the United States Code.

## STANDARD FOR SUMMARY JUDGMENT

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). If there is no genuine issue of material fact, and the issue to be decided is a matter of law, a ruling on a motion for summary judgment is appropriate. However, if there are genuine issues of material fact, then summary judgment is not appropriate. "When a motion for summary judgment is made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

**FACTUAL HISTORY**

Cathy Lynn Henries (the "Debtor") filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code (the "Code") on December 3, 2008. The Defendant is the former spouse of the Debtor. The Debtor and the Defendant owned, as tenants by the entirety, a parcel of real property located at 196 Moore Lane, Marshallberg, North Carolina (the "Property"). The Property was conveyed to the Debtor and the Defendant as husband and wife on June 14, 1999, by North Carolina General Warranty Deed and was recorded with the Carteret County, North Carolina Register of Deeds at Book 859, Page 23. This conveyance created a tenancy by the entirety between the Debtor and the Defendant. On April 29, 2005, the Debtor and the Defendant entered into a separation agreement. The separation agreement required the Debtor to Quitclaim her interest in the Property to the Defendant. On April 29, 2005, a Quitclaim Deed was executed by the Debtor. The Quitclaim Deed provided that the Property "shall be absolutely dissolved and terminated and any interest that [the Debtor] may have in and to the aforesaid land and property, be extinguished and that title to the same shall vest absolutely, solely, and in fee simple to [the Defendant] . . . free and discharged of any claim . . ." The Quitclaim Deed further provided that the Defendant "assumes and shall pay on a timely basis any and all debts secured" by the Property. On July 11, 2006, a Divorce Judgment was entered in Craven County dissolving the marriage between the Debtor and the Defendant. Since April 29, 2005, the Defendant has made all the mortgage payments on the Property and has paid for all improvements to the Property.

Schedule A, filed on December 3, 2008, describes the Debtor's interest in the Property as "house and land owned by [Debtor's] ex-husband." Schedule A states the current value of Debtor's interest in the property is $264,606.00. Schedule D lists Washington Mutual as having a first mortgage on the Property with a payoff of $118,460.00 and Cooperative S&L as having a second mortgage on

3

the Property with a payoff of $23,188.97, leaving a substantial amount of equity of $122,957.03. On March 26, 2009, Schedule A was amended to show that "at the time of filing [Debtor] owns no real estate; her interest in the real property was transferred to her former husband as part of a marital settlement." Amended Schedule A states the current value of Debtor's interest in the property is $0.00.

The meeting of creditors, as required by 11 U.S.C. § 341 was held on January 8, 2009. At the Section 341 meeting, the Chapter 13 Trustee examined the Debtor under oath. On January 9, 2009, the day following the Section 341 meeting of creditors, the Quitclaim Deed was filed and recorded with the Carteret County Register of Deeds at Book 1294, Page 449. Until one day after the Section 341 meeting, the Quitclaim Deed had not been recorded. Who recorded the Quitclaim Deed and in whose possession was the Quitclaim Deed prior to recording are unknown.

The Minutes of the 341 Meeting and Motion for Confirmation of Plan (the "Minutes") was filed on April 8, 2009. The Minutes provide as to "COOPERATIVE BANK, 2ND MORTGAGE, THE DEBTOR ABANDONS HIS INTEREST IN THE COLLATERAL. THE TRUSTEE WILL NOT PAY THIS CLAIM UNLESS A DEFICIENCY CLAIM IS FILED." (emphasis in original). The Minutes further provide as to "WASHINGTON MUTUAL, 1ST MORTGAGE, THE DEBTOR ABANDONS HIS INTEREST IN THE COLLATERAL. THE TRUSTEE WILL NOT PAY THIS CLAIM UNLESS A DEFICIENCY CLAIM IS FILED." (emphasis in original). No objection to the Minutes were filed and an order confirming the plan was entered on May 5, 2009.

On July 6, 2010, the case was converted to one under Chapter 7 of the Code and George M. Oliver was duly appointed as the Chapter 7 Trustee (the "Trustee"). The Trustee initiated this adversary proceeding against the Defendant on January 7, 2011. The Trustee, in his complaint, seeks to avoid the Quitclaim Deed pursuant to 11 U.S.C. § 549 on the grounds that the transfer occurred after the commencement of the bankruptcy case and was not authorized under the Code or by the Court.

4

Specifically, the Trustee contends that although the Quitclaim Deed was executed on April 29, 2005, it was not recorded until January 9, 2009, subsequent to the petition date in violation of 11 U.S.C. § 549. The complaint requests that the avoided transfer be preserved for the benefit of the estate.

The Defendant alleges two affirmative defenses. First, the Defendant contends that the Debtor has no right or ownership interest in the Property, because she quitclaimed all of her interest in the property by way of a valid North Carolina Separation Agreement and Property Settlement dated April 29, 2005, the execution of the Quitclaim Deed dated April 29, 2005, the filing of the Quitclaim Deed, and the Court's authorization of the abandonment of the Debtor's interest in the property. Second, the Defendant alleges that the Trustee's interest in the Property is negligible. Since April 29, 2005, the Defendant has been making the mortgage payments on the Property, as well as paying for all improvements to the Property. Therefore, even if the Trustee prevails under 11 U.S.C. § 549, the Defendant alleges he is entitled to all improvements and increased value of the Property as defined in 11 U.S.C.§ 550(e).

On November 7, 2011, the Defendant filed a Motion for Summary Judgment. The Defendant contends the undisputed facts demonstrate that the Court authorized the abandonment of the Debtor's interest, if any, in the Property, by entry of the Order Confirming Chapter 13 Plan on May 5, 2009. If the Court authorized the abandonment of the Property, the Trustee may not avoid the transfer under 11 U.S.C. § 549. Specifically, the Defendant relies on 11 U.S.C. § 1325(a)(5)(c), which allows debtors to surrender collateral to a secured creditor. Defendant cites to cases including *In re Alexander*, 225 B.R. 665, 666 (Bankr. E.D. Ark. 1998) and *In re Cormier*, 434 B.R. 222, 233 (Bankr. D. Mass. 2010), which hold that although the debtor does not have possession of the creditor's collateral, the debtor may nevertheless surrender his interest in the collateral through the Chapter 13 plan pursuant to section 1325(a)(5)(c) without actually delivering the collateral to the creditor. *In re*

5

*Alexander*, 225 B.R. at 666.  The Defendant contends, that in the instant case, the Debtor did just that. Although, the Debtor's Plan provides she "abandons" her interest in the Property, instead of she "surrenders" the Property, it is clear the Debtor utilized 11 U.S.C. § 1325(a)(5)(c) of the Code to relinquish her rights in the Property.  The Defendant argues, upon entry of the Confirmation Order, any interest the Debtor had at the time she filed bankruptcy was surrendered or abandoned to the secured creditors with Court approval, and the Trustee should not be able to avoid the Debtor's relinquishment of her interest in the Property.

The Trustee responds that genuine issues of material fact arise as to whether the Court authorized the transfer of the Debtor's interest in the Property.  The original Schedule A disclosed the real property and listed the current value of the debtor's interest as $264,606.00.  The Trustee notes that it was not until January 9, 2009, subsequent to the petition date, that the Quitclaim Deed was recorded in Carteret County, North Carolina and conveying all of the Debtor's rights and one-half undivided interest as tenant in common in the Property to the Defendant.  Therefore, it was not until after the petition had been filed, that the Debtor made a clear and unmistakable attempt to abandon her interest in the Property.  Because the Debtor's petition had already been filed at this time, the transfer of the Property of the bankruptcy estate required approval from the Court.  Pursuant to 11 U.S.C. § 549, the Trustee's cause of action arose at the time the Quitclaim Deed was recorded on January 9, 2009.  The later entry of the Confirmation Order did not negate the Trustee's cause of action. Therefore, the Trustee contends there is a genuine issue of material fact with respect to whether the Confirmation Order ratified the transfer.

At the hearing, both the Defendant and the Debtor agreed that the sole issue before the Court for purposes of deciding the Motion was whether the Confirmation Order authorized the transfer of the Debtor's interest in the Property.  The Defendant contends the undisputed facts demonstrate that

he is entitled to judgment as a matter of law. The Chapter 7 Trustee contends a genuine issue of material fact exists with respect to whether the Court authorized the transfer of the Debtor's interest in the property.

## DISCUSSION

11 U.S.C. § 549 provides "the trustee may avoid a transfer of property of the estate— (1) that occurs after the commencement of the case; and . . . . (2)(B) that is not authorized under this title or by the court." Pursuant to Bankruptcy Rule 6001, any entity asserting the validity of a transfer under § 549 has the burden of proof at trial, which in this case is the Defendant. The Court finds genuine issues of material fact exist as to whether the Court authorized the transfer of the Debtor's interest in the Property.

The Defendant cites several cases supporting his argument that the Confirmation Order authorized the abandonment of the Property to Cooperative Bank and Washington Mutual. The cases stand for the proposition that "absent evidence of bad faith or fraud on the part of the debtor, the debtor [can] surrender her interest in the collateral [to the creditor] without the necessity of actually delivering the property to the creditor," in satisfaction of a creditor's secured claim. *In re Alexander*, 225 B.R. 665, 667 (Bankr. E.D. Ark. 1998) (holding that a debtor may surrender the collateral pursuant to 11 U.S.C. § 1325(a)(5) when the debtor's spouse absconded with the collateral and the debtor no longer has possession of the collateral); *In re Anderson*, 316 B.R. 321, 323 (Bankr. W.D. Ark. 2004) (holding that the debtor is entitled to surrender her interest in the collateral pursuant to 11 U.S.C. § 1325(a)(5)(c), even without having possession of the collateral when no bad faith or fraud on the part of the debtor was presented); *In re Cormier*, 434 B.R. 222, 233 (Bankr. D. Mass. 2010) (holding that although debtors may cede their rights to possession of property pursuant

7

to a chapter 13 plan, the creditor cannot be compelled to take immediate possession of the property); and *Internal Revenue Service v. Logan*, (*In re White*), 487 F.3d 199, 204-05 (4th Cir. 2007) (holding that proposing to surrender personal property that is exempted from administrative levy by the IRS, which would in essence allow the debtor to retain the "surrendered" collateral, was in effect no surrender at all under 1325(a)(5)(C)). The Defendant asserts that although the word "abandon" is used instead of "surrender" the Court authorized the abandonment of any interest the Debtor had in the Property to the secured creditor. Therefore, the recording of the Quitclaim Deed post filing date makes no difference.

The Court finds there are genuine issues of material fact as to whether the Court authorized the "transfer of the property of the estate." Although the Confirmation Order may have authorized the Debtor to abandon her interest in the Property to the secured creditor, the Court finds there are questions of material fact as to whether the Court authorized the "transfer of the property of the estate" to the Defendant. The Minutes only provide that the Property was abandoned to the secured creditors. The Minutes and the Petition fail to identify that the Property was conveyed by a Quitclaim Deed that was executed prior to the petition date, but was recorded subsequent to the petition date. In the Debtor's initial Schedule A filed on December 3, 2008, the Debtor describes her interest in the Property as "House and land owned by her ex-husband." Initial Schedule A states the current value of Debtor's interest in the property was $264,606.00. Amended Schedule A, filed on March 26, 2009, describes her interest in the Property as "at the time of filing debtor owns no real estate; her interest in the property was transferred to her former husband as part of a marital settlement." Both descriptions are misleading as to the Debtor's actual interest in the property at the

8

time of filing. Title to a one-half tenancy in common interest still resided in the Debtor on the filing date of the petition.

Neither counsel for the Debtor nor counsel for the Defendant were present at the Section 341 meeting. An audio recording of the meeting exists, but the sound quality is poor and it remains unclear as to whether the Chapter 13 Trustee was aware that the Quitclaim Deed would be recorded subsequent to the petition date, on the day following the Section 341 meeting. Significant questions are unanswered by the present record, including, did the Chapter 13 Trustee intend to abandon the interest in the Property; did the Trustee take into account the equity interests in regard to the calculation of the liquidation test; and did the Trustee have knowledge of the circumstances surrounding the recording of the Quitclaim Deed. All of the above remain genuine issues of material fact which preclude granting summary judgment in favor of the Defendant.

Therefore, the Motion for Summary Judgment is **DENIED**.

**SO ORDERED.**

**END OF DOCUMENT**