**SO ORDERED.**

**SIGNED this 25 day of June, 2012.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION

IN RE:

| | |
|---|---|
| CATHY LYNN HENRIES | CHAPTER 7<br>CASE NUMBER: 08-08631-8-RDD |
| Debtor | |

| | |
|---|---|
| GEORGE M. OLIVER, TRUSTEE | ADVERSARY PROCEEDING<br>NUMBER: 11-00003-8-RDD |
| Plaintiff | |
| v. | |
| JEFFREY ALLEN MOORE | |
| Defendant | |

## ORDER

Pending before the Court is the complaint filed by George Mason Oliver, the Chapter 7 Trustee (the "Trustee") on January 7, 2011 initiating the Adversary Proceeding against Jeffery Allen Moore (the "Defendant"). The Court conducted the trial of the adversary proceeding on May 17, 2012 in Wilson, North Carolina.

## JURISDICTION

Subject matter jurisdiction and jurisdiction over the parties exists pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference of the United States District Court for the Eastern District of North Carolina dated August 3, 1984.

This matter is a core proceeding as set forth in Section 157(b)(2) of Title 28 of the United States Code.

## FACTUAL HISTORY

Cathy Lynn Henries (the "Debtor") filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code (the "Code") on December 3, 2008. The Defendant is the former spouse of the Debtor. The Debtor and the Defendant owned, as tenants by the entirety, a parcel of real property located at 196 Moore Lane, Marshallberg, North Carolina (the "Property"). The Property was conveyed to the Debtor and the Defendant as husband and wife on June 14, 1999, by North Carolina General Warranty Deed and was recorded with the Carteret County, North Carolina Register of Deeds at Book 859, Page 23. This conveyance created a tenancy by the entirety between the Debtor and the Defendant.

On April 29, 2005, the Debtor and the Defendant entered into a separation agreement. The separation agreement required the Debtor to deed her interest in the Property to the Defendant by quitclaim deed (the "Quitclaim Deed"). The separation agreement provides that the Debtor will quitclaim her interests in the Property and the Defendant will "indemnify and hold Wife harmless" from the mortgage on the Property held by Washington Mutual with a payoff amount of $126,159.15 as of April 29, 2005. In addition to taking primary responsibility for the mortgage on the Property, the separation agreement provides the Debtor and the Defendant will share joint custody of a minor child born into the marriage with the child's primary placement being with the Defendant.

Furthermore, under the separation agreement, the Defendant indemnified the Debtor of additional debts in excess of $26,000.00 while the Debtor indemnified the Defendant of debts in excess of $46,000.00.

On April 29, 2005, the Debtor and the Defendant met at a Cooperative Bank in Beaufort, North Carolina. There, the Debtor executed two copies of the separation agreement and Quitclaim Deed in the presence of a notary public and the Defendant. Both the Debtor and the Defendant left the bank with an executed copy of the Quitclaim Deed, which purported to transfer any interest the Debtor had in the Property to the Defendant.[1] From here it becomes unclear whether the Defendant retained possession of the Quitclaim Deed. However, the Defendant has made all the mortgage payments on the Property and has paid for all improvements to the Property since April 29, 2005, pursuant to the separation agreement and the Quitclaim Deed.[2] On July 11, 2006, a Divorce Judgment was entered in Craven County dissolving the marriage between the Debtor and the Defendant.

Both the Debtor and the Defendant testified it was their intent for the Property to remain in possession of the Defendant so that their minor son could inherit the Property. The Debtor and the Defendant purchased the Property from the Defendant's father after they were married. The two placed a double-wide mobile home on the Property and lived there with their son and the Debtor's

---

[1]The Quitclaim Deed provided that the Property "shall be absolutely dissolved and terminated and any interest that [the Debtor] may have in and to the aforesaid land and property, be extinguished and that title to the same shall vest absolutely, solely, and in fee simple to [the Defendant] . . . free and discharged of any claim . . ." The Quitclaim Deed further provided that the Defendant "assumes and shall pay on a timely basis any and all debts secured" by the Property.

[2]The evidence shows the Defendant has made approximately $40,000.00 in mortgage payments since January 2009 and that he has also paid $8,492.73 to Cooperative Bank on a home equity loan since January 2009.

3

two additional children. When the couple separated, they agreed it was best for their son to remain in the home on the Property in the primary custody of the Defendant. In an effort to remain as amicable as possible, the Debtor took her personal possessions but left the couple's remaining personal property in the home. The Property is located in rural Carteret County on a street where several members of the Defendant's extended family live, including his parents and siblings.

Upon filing the bankruptcy petition, the Debtor attempted to disclose her previous interest in the Property and indicate that she no longer held any interest in the Property through her schedules. In her original Schedule A, filed on December 3, 2008, the Debtor describes her interest in the Property as "house and land owned by [Debtor's] ex-husband." Schedule A states the current value of Debtor's interest in the property is $264,606.00. Schedule D lists Washington Mutual as having a first mortgage on the Property with a payoff of $118,460.00 and Cooperative S&L as having a second mortgage on the Property with a payoff of $23,188.97, leaving a substantial amount of equity of $122,957.03.[3] On March 26, 2009, Schedule A was amended to show that "at the time of filing [Debtor] owns no real estate; her interest in the real property was transferred to her former husband as part of a marital settlement."[4] Amended Schedule A states the current value of Debtor's interest in the property is $0.00.

The meeting of creditors, as required by 11 U.S.C. § 341, was held on January 8, 2009. At the Section 341 meeting, the Chapter 13 Trustee examined the Debtor under oath. The Chapter 13 Trustee questioned the Debtor about the Property and requested that she provide him additional

---

[3]The Debtor's bankruptcy attorney testified that the information was included in the Debtor's schedules because the Debtor was still liable on the debt to Washington Mutual, but the Debtor did not own the collateral securing the debt.

[4]After the Section 341 meeting, held on January 8, 2009, the Debtor amended Schedule A to further clarify she had no interest in the Property.

4

information regarding her interest in the Property after the 341 meeting.[5] On January 9, 2009, the day following the Section 341 meeting of creditors, the Quitclaim Deed was filed and recorded with the Carteret County Register of Deeds at Book 1294, Page 449. Prior to the day after the 341 meeting the Quitclaim Deed had never been recorded. Neither the Debtor nor the Defendant are aware who recorded the Quitclaim Deed or in whose possession the Quitclaim Deed was in prior to recording. The Defendant testified he received a copy of the recorded Quitclaim Deed in the mail but was unaware of who caused the deed to be recorded. The Defendant was unable to locate the executed Quitclaim Deed he received on April 29, 2005.[6] The Minutes of the 341 Meeting and Motion for Confirmation of Plan (the "Minutes") was filed on April 8, 2009. No objection to the Minutes were filed and an order confirming the plan was entered on May 5, 2009.[7]

On July 6, 2010, the case was converted to one under Chapter 7 of the Code and George M. Oliver was duly appointed as the Chapter 7 Trustee (the "Trustee"). The Trustee recorded the Notice of Bankruptcy Filing and Bankruptcy Estate ("Notice of Bankruptcy Filing") in the Carteret County Register of Deeds on November 15, 2010, Book 1358, Page 352. The Trustee initiated this

---

[5]The Chapter 13 Trustee testified that upon receiving additional documentation from the Debtor, he was satisfied that the Property had been transferred on April 29, 2005 and thus had not become property of the estate. Accordingly, the Chapter 13 Trustee filed the Minutes of the 341 Meeting and Motion for Confirmation of Plan indicating the intent to abandon any interest in the collateral on April 8, 2009.

[6]The Defendant said he believed the Quitclaim Deed might be located in a storage shed outside of his home, which received damage from a recent hurricane, but he had not seen the deed in some time.

[7]The Minutes provide as to "COOPERATIVE BANK, 2ND MORTGAGE, THE DEBTOR ABANDONS HIS INTEREST IN THE COLLATERAL. THE TRUSTEE WILL NOT PAY THIS CLAIM UNLESS A DEFICIENCY CLAIM IS FILED." (emphasis in original). The Minutes further provide as to "WASHINGTON MUTUAL, 1ST MORTGAGE, THE DEBTOR ABANDONS HIS INTEREST IN THE COLLATERAL. THE TRUSTEE WILL NOT PAY THIS CLAIM UNLESS A DEFICIENCY CLAIM IS FILED." (emphasis in original).

5

adversary proceeding against the Defendant on January 7, 2011. In his complaint, the Trustee seeks to avoid the Quitclaim Deed pursuant to 11 U.S.C. § 549 on the grounds that the transfer occurred after the commencement of the bankruptcy case and was not authorized under the Code or by the Court. Specifically, the Trustee contends that although the Debtor executed the Quitclaim Deed on April 29, 2005, it was not recorded until January 9, 2009, subsequent to the petition date in violation of 11 U.S.C. § 549. The complaint requests that the avoided transfer be preserved for the benefit of the estate.

The Defendant alleges two affirmative defenses. First, the Defendant contends the Trustee has no authority to avoid the recordation of the Quitclaim Deed as a post-petition transfer pursuant to § 549. The Defendant cites several cases that indicate North Carolina law provides the transfer of a deed becomes effective as a transfer of title between the parties to the deed immediately upon execution and delivery of the deed. *Ballard v. Ballard*, 230 N.C. 629, 55 S.E.2d 316 (1949); *see also In re Craddock*, 403 B.R. 355 (Bankr. M.D.N.C. 2009) (holding once a grantor has given possession of a deed to another, without condition for the benefit of the grantee, delivery is complete and the grantor's power of recall is forever gone). The Defendant asserts that the Debtor executed and delivered the Quitclaim Deed to the Defendant on April 29, 2005, pre-petition, and the Property did not become property of the bankruptcy estate upon the filing of the petition. Therefore, at the time of the filing of the bankruptcy petition, the Debtor had no interest in the Property. As such, the Defendant contends the Trustee has no authority under § 549 to avoid the Quitclaim Deed because § 549 only pertains to transfers of property of the estate post-petition.

Second, the Defendant argues the post-petition act of recordation of the Quitclaim Deed is not a transfer as defined by the Code. The Defendant asserts that a transfer is defined as the creation of a lien, retention of title as a security interest, foreclosure on a debtor's equity of redemption, or

6

another mode of disposing of property or an interest in property. 11 U.S.C. § 101(54). The Defendant likens the recording of the Quitclaim Deed to the recording of a mortgage. The Defendant states that the purpose of recording a mortgage is to give notice to third parties and the mortgage is effective without recordation. As such, the Defendant asserts that the recording of the Quitclaim Deed in January 2009 only served to place third parties on notice and was not a transfer of property or an interest in property.

## **DISCUSSION**

Section 549(a) of the Code allows the Trustee to avoid a transfer of property of the estate that occurs after the commencement of the case or is not authorized under title 11 of the Code or by the bankruptcy court. 11 U.S.C. § 549(a). A post-petition transfer of real estate made to a good faith purchaser may only be avoided if proper notice of the petition is given before such a transfer is perfected against a bona fide purchaser's superior interest in title as provided in 11 U.S.C. § 549(c). *In re Konowitz*, 905 F.2d 55, 56 (4th Cir. 1990) (holding a sale prior to the filing of a Chapter 13 petition was subject to avoidance since the sale was not perfected until after notice of the bankruptcy was filed).

Section 549(c) provides the following exception to trustee's avoidance powers:

> The trustee may not avoid under subsection (a) of this section a transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of an interest in such real property maybe recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such real property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to such interest of a good faith purchaser.

11 U.S.C. § 549(c).

Based on the evidence presented, the Court finds the Trustee may not avoid the Quitclaim Deed pursuant to the the § 549(c) exception to subsection (a). Section 549(c) requires a finding of

7

a good faith purchaser of real property who, without knowledge of the bankruptcy case, receives a transfer of property for present fair equivalent value.

A purchaser is defined by the Code as a "transferee of a voluntary transfer." 11 U.S.C. § 101(43). A transfer includes, among other things, "each mode, direct or indirect, absolute of conditional, voluntary or involuntary, of disposing of or parting with– (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54). The Debtor executed the Quitclaim Deed and delivered it to the Defendant at their meeting at Cooperative Bank on April 29, 2005, effectively transferring her interest in the Property.[8] While the evidence shows confusion as to whose possession the Quitclaim Deed was in at the time it was recorded, it is undisputed that the Defendant left the Cooperative Bank on April 29, 2005 with an executed copy of the the Quitclaim Deed.[9] The Defendant accepted delivery of the Debtor's interest in the Property pursuant to the terms of the valid separation agreement with the Debtor. Furthermore, such transfer was made without the Defendant's knowledge of the commencement of the bankruptcy case as the Debtor did not file the bankruptcy petition until some three and a half years after the Defendant received the executed Quitclaim Deed.

---

[8]The Court notes that "under North Carolina law, an unrecorded, but written conveyance of land is valid as between the executing parties." *In re Carpenter*, No. 09-03678-8-SWH, 2010 WL 785805, at *2 (Bankr. E.D.N.C. March 2, 2010) (citing *Daniel v. Wray*, 158 N.C. App. 161, 171-72, 580 S.E.2d 711, 719 (2003)). However, to be perfected as to third parties, the conveyance must be recorded pursuant to N.C. Gen. Stat. § 47-18(a). *Id.* (citing *Beasley v. Wilson*, 267 N.C. 95, 97, 147 S.E.2d 577, 579 (1966)).

[9]Federal Rule of Bankruptcy Procedure 6001 provides "[a]ny entity asserting the validity of a transfer under § 549 of the Code shall have the burden of proof." Fed. Rule Bankr. Pro. 6001. As the party asserting the April 29, 2005 transfer of the Quitclaim Deed from the Debtor to the Defendant is valid, the burden of proof falls on the Defendant. The Court finds it is undisputed that the Defendant left Cooperative Bank on April 25, 2009 with copy of the Quitclaim Deed executed by the Debtor, thus evidencing the validity of the transfer.

In keeping with other courts, the Court finds "[f]ederal appellate case law interpreting the phrase 'present fair equivalent value' in § 549 is in short supply." *In re Phinney*, 405 B.R. 170, 177 (E.D. Va. 2009). Much debate has arisen in what constitutes "present fair equivalent value" pursuant to § 549(c). On the appellate level, courts have accepted that "present fair equivalent value" under 549(c) is akin to "reasonably equivalent value" under 11 U.S.C. § 548. *See Id.* (citing *T.F. Stone Co. v. Harper*, 72 F.3d 466, 472 (5th Cir. 1995) (explaining in the context of a forced sale there is no meaningful difference between "reasonable" and "present fair" equivalent value)). Courts agreeing with this interpretation extend the Supreme Court's holding in *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994) to § 549(c) in cases involving forced sales of the real property. *BFP* holds the phrase "reasonable equivalent value" in § 548 is not equal to fair market value and that the winning bid at a foreclosure sale is the reasonably equivalent value of a property so long as the sale complied with applicable state law. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 545 (1994). Other courts decline to extend *BFP's* holding to § 549(c) and reason that "present fair equivalent value" refers to purchasers who have paid a fair price, which includes an analysis of the value of any liens on the real property. *In re Phinney*, 405 B.R. at 177 (citing *Miller v. NLVK, LLC*, 454 F.3d 899, 902 (8th Cir. 2006) (finding courts must analyze the actual amount paid, including surviving liens on the property, to determine whether a purchaser paid "present fair equivalent value")). As the impact of a forced sale is not an issue presented before the Court in this case, the Court finds whatever the exacting standards Congress intended to imply through use of the phrase "present fair equivalent value," such value should at a minimum constitute a fair exchange. *See Id*. (explaining debtors who received at least 80% of their equity received a fair price or present fair equivalent value as required by § 549(c)). Therefore, analysis of the "present fair equivalent value" received for the

transfer of the Debtor's interest in the Property shall include consideration of the facts and circumstances related to the benefit the Debtor received for such transfer.

Based on the evidence in the present case, the Court finds the transfer of the Property was for present fair equivalent value. The Defendant indemnified the Debtor from the mortgage to Washington Mutual, with a payoff amount of $126,159.15. Prior to entering into the separation agreement, both the Debtor and the Defendant were liable on the mortgage to Washington Mutual. The effect of the Defendant's indemnification of the Debtor is akin to the buyout of the Debtor's interest in the Property as the Debtor was no longer required to contribute to the $126,159.15 balance of the mortgage.[10] The Defendant also assumed sole liability for additional debts in excess of $26,000.00. Further, the separation agreement provides that the Defendant became the primary caretaker of the couple's minor son, who resides on the Property with the Defendant. Finally, the Defendant has made all mortgage payments and preformed all maintenance and improvements on the Property since April 2005, further establishing the Defendant's intent to indemnify the Debtor pursuant to the separation agreement and the Quitclaim Deed. The Debtor testified he paid over $40,000.00 on the first mortgage now held by JPMorgan Chase & Co. and $8,492.73 on a home equity line since January 2009. As such, the Court finds the Debtor transferred her interest in the Property for considerable fair value and meets the present fair equivalent value requirement of § 549(c).

The final element under § 549(c) requires that the trustee has not filed a copy or notice of the bankruptcy petition "where a transfer of an interest in such real property may be recorded to perfect

---

[10] As a tenant by entirety, prior to executing the Quitclaim Deed, the Debtor owned an undivided one-half interest in the Property. In exchange for the Debtor's interest in the Property the Defendant effectively assumed the entire balance of the mortgage, $126,159.15, and has in fact continued to make payments.

such transfer, before such transfer is so perfected . . . ." 11 U.S.C. § 549(c).  The Court finds in North Carolina, the register of deeds is the duly authorized agency to record and register conveyances of an interest in real property. N.C. Gen. Stat. § 47-16.4 (2005).  The transfer of the Quitclaim Deed was recorded with the register of deeds in Carteret County, North Carolina on January 9, 2009, Book 1294, Page 449.  The Court takes judicial notice that the Trustee, recorded the Notice of Bankruptcy Filing with the register of deeds in Carteret County on November 15, 2010, Book 1358, Page 352.[11]  The Quitclaim Deed from the Debtor was perfected by recording with the the register of deeds approximately one year and ten months prior to the Trustee's recording of the Notice of Bankruptcy Filing and Bankruptcy Estate.  Therefore, notice of the petition was not filed before the "transfer of an interest in . . . [the] real property . . . [was] recorded to perfect such transfer . . . ." 11 U.S.C. § 549(c).  Accordingly, the filing of the Notice of Bankruptcy Filing on November 15, 2010 does not preclude application of the exception to an avoidance of a post-petition transfer under § 549(c).

     The Court finds the Defendant is a good faith purchaser who received a transfer of the Debtor's interest in the Property for present fair equivalent value pursuant to § 549(c).  Further, the Trustee failed to record the Notice of Bankruptcy Filing prior to the recording and perfection of the Quitclaim Deed.  Therefore, the Court holds the Trustee's complaint to avoid the transfer of the Property to the Defendant pursuant to § 549 is **DISMISSED** with prejudice.  The Clerk of Court is directed to enter judgment for the Defendant.

     **SO ORDERED.**

**END OF DOCUMENT**

---

[11]Federal Rule of Evidence 201(b) allows a court to take judicial notice of a fact not subject to reasonable dispute because it is: "(1) generally known within the trial court's territogial jurisdiction; or (2) can be accurately and readily determined from sources whose accruacy cannot be reasonably questioned." Fed. R. Evid. 201(b).